## HERSOM & a. *v.* HENDERSON.

Where an action was brought in the name of a firm upon a warranty in the sale of a horse, and it appeared that one of the members of the firm, upon the sale of the animal, took a receipt in his own name for the price — *held that the receipt did not preclude the plaintiffs from showing that the business was transacted for the firm*; and that an action could be maintained in their name, notwithstanding the receipt.

A receipt, containing evidence of the delivery of property or the payment of money merely, may be explained or contradicted.

General reputation is not competent evidence to show a partnership; but the transactions of the alleged partners may be received, unless they be such as to conflict with some known rule of evidence.

Where the question was, whether a certain horse had fits, and it appeared that the plaintiffs did not use the animal, although needed, *held*, that the directions of the plaintiffs to their hostler when the horse was standing in the stable unused, not to let it, because it had fits, might be given in evidence as part of the *res gestœ*.

For the purpose of showing that the reputation of a witness for truth was bad, he was asked on cross examination if his neighbors did not call him *lying Josh*. *Held*, that the question was incompetent to be put to other witnesses, according to the practice in this State, with a view of impeaching the principal witness, and could not therefore be legally put to himself for that purpose.

Witnesses cannot be contradicted upon collateral matters, drawn out on cross examination; nor can such collateral matters lay the foundation for the introduction of evidence, which could not itself be admissible as independent testimony.

ASSUMPSIT, founded upon an alleged sale of two horses by the defendant to the plaintiffs, for two hundred and fifty dollars, with a warranty that they were sound, and an averment that one of them was unsound. Plea the general issue.

The plaintiffs evidence tended to prove that they were partners, using the style and firm of Hersom & Co.; that Hersom was the active partner, and often transacted the business of the firm in his own name, and without mentioning the firm. The defendant objected that the plaintiffs could not show that they used any other firm than that alleged in the declaration; but the court ruled that the plaintiffs need not declare in the name in which they contracted.

A witness for the plaintiffs testified that he had known Hersom to transact the business of the company in his own name. The defendant objected that if instances of such dealings might be shown, general statements were not admissible, but the objection was overruled.

The plaintiffs' evidence tended to show that the defendant first offered to sell the horses to one Hall, who declined to purchase, but said if the defendant would warrant them sound, he had some friends who wished to purchase, naming the plaintiffs, Hersom and Nason; and upon the defendant's answering that he would warrant them, he sent word to the plaintiffs by the defendant, to come up and see them; that Nason came up and looked at the horses, but Henderson was absent, and the next day Hersom came up, tried the horses, and purchased them for two hundred and fifty dollars. On notice from the defendant, the plaintiffs produced a bill of the horses, which was as follows:

. "*March* 12*th*, 1849.

Mr. Isaac Hersom, bo't of Charles Henderson, one brown horse, eight years old this spring, one bay mare, eight years old this spring.................................... $250.

Received payment,

CHARLES HENDERSON."

. The defendant objected, that, against this receipt, the plaintiffs could not show that the purchase was made for Hersom & Co., but the objection was overruled.

The plaintiffs alleged in their writ that they had been put to great expense in keeping and feeding the mare in question. And their evidence tended to prove that she stood in the plaintiffs' livery stable without being let, though her labor was needed, and a witness employed in the stable testified that he was directed by the plaintiffs not to let her, because she had fits. The defendant objected to this evidence, but it was admitted.

A witness, Joshua Rollins, introduced by the plaintiffs, testified that he purchased the mare, and that before he bought her, and after, he knew her to have fits. On cross examination, he testified that he sold the mare to one Rowell. He was asked what representations he made to Rowell as to the mare. This was objected to, but the objection was overruled; and he then testified in substance that he represented her to be sound, though he knew her to be otherwise. This witness was asked, "Do your neighbors call you *lying Josh?*" This was objected to, and ruled inadmissible.

The defendant offered evidence to prove that the alleged sale to Rollins was a mere pretence and sham, and that the sale made by him, as he testified, by false representations, was made for and on account of the plaintiffs, and for a larger sum than they gave the defendant, and for as much as she was worth if every way sound. This evidence was objected to and ruled out.

Rowell, who was a witness introduced by the defendant, was asked if the mare was sold upon a condition that she might be returned within fourteen days, and the seller would pay back a certain sum, but the question was objected to and excluded.

The defendant excepted to the several rulings of the court, and the jury having found a verdict for the plaintiffs, the defendant moved that it might be set aside on account of said rulings and exceptions.

*Christie,* with whom was *Kimball,* for the defendant.

1. The declaration is not sustained by the evidence. It sets forth a contract made with the plaintiffs, as partners by and under the name of " Hersom & Co. ;" but the written sale, bill and receipt show that the contract was with Isaac Hersom. There

is therefore a variance between the declaration and the evidence, and the latter does not sustain the former. The evidence in the case would not have entitled the defendant to maintain an action against both the plaintiffs in their partnership name, or otherwise, for the purchase money of the sale, had it not been paid ; and the same rule should apply " *e converso.*"

2. The testimony of a witness that he had known Hersom to transact the business of the company in his own name, without specifying what the business was, or with whom it was done, was inadmissible. It is not a case of general reputation, where general evidence may be given, and where, too, the adverse party has the opportunity to show, if such be the fact, that there is no such general reputation. The evidence in a matter of this sort should be so specific as to allow of being met and contradicted if not true.

3. The plaintiffs having a partnership name in which Hersom was authorized to do, and ordinarily did do the business of the firm, he had no right to bind Nason by or under any other name ; and allowing him to prove that this contract was made for and on behalf of himself and of Nason, is allowing him to contradict the writing as to who were the parties to the contract. Neither was there anything from which the defendant Henderson could know or infer that Nason was a party to, or interested in the contract.

4. The testimony of a witness employed in the stable, that he was directed by the plaintiffs not to let the mare because she had fits, was not admissible. The great question in the case was, whether the mare was subject to fits or not; and the declarations of the plaintiffs to third persons as to this matter, are not admissible ; especially as it does not appear that these declarations were not made long after the controversy about the soundness of the mare had arisen, and after Hersom had attempted to return the horses and rescind the contract. A party cannot be allowed thus to manufacture evidence for himself, touching a material matter in dispute. It does not come within the rule of being a declaration of the plaintiffs, explaining a contemporaneous act, even if that rule could ever apply in such a case, (which is not admitted) for the plaintiffs did no act.

5. The question, "Do your neighbors call you *lying Josh ?*" propounded to the witness, Rollins, should have been allowed. It was virtually asking him whether his own reputation for truth, among his neighbors, was not bad. This was a material enquiry, and we see no reason why it might not be put to this witness himself, as well as to any other, if the defendant chose to risk his answer.

6. The evidence that the sale, made by Rollins, of the mare in question, was made as the agent and on account of the plaintiffs, and for a larger sum than they gave the defendant for her, and for as much as she was worth if every way sound, was competent and should have been admitted, especially in connection with what was proposed to be shown by Rowell, who was the purchaser of the mare, as stated in the next paragraph of the case; which, too, should have been admitted. It went to show that the plaintiffs had in fact sustained no damage, and to contradict the allegation that the mare was lost to them on account of unsoundness.

*J. S. Wells,* with whom was *J. S. Woodman,* for the plaintiffs.

1. It was left with the jury, on the evidence, to find with whom the contract was in fact made. The plaintiffs were partners in the stabling business, and the fact of the sale and warranty being made to the plaintiffs is not controlled by the receipt of the defendant to one of the plaintiffs, for the money. 1 Chit. Plead., 2, 7; 14 East's Rep., 210; *Reynold* v. *Cleveland,* 4 Cowen's Rep., 282; *Muldon* v. *Whitlock,* 1 Cowen's Rep., 290; *Brown* v. *Cooke et al.,* 3 N. H. Rep., 64, and cases cited; *Dix* v. *Otis, et al.,* 5 Pick. Rep., 38.

2. The fact that the plaintiffs did not use the mare, though her labor was needed, was competent evidence; and the reason assigned by the plaintiffs, at the time of directing the person in care of the stable not to let her, was admissible upon principle. *Sessions* v. *Little,* 9 N. H. Rep., 271; *Haynes* v. *Rutter,* 24 Pick. Rep., 242.

3. The court ruled correctly in disallowing the question to Rollins; first, because the witness should not be subjected to

answer insulting questions, and second, it was not the mode to impeach a witness if not truthful. *State* v. *Howard*, 9 N. H. Rep., 485.

4. Whether the sale to Rollins was a sham or not, and the price for which he sold the mare, are alike immaterial. If Rollins sold her for himself or for the plaintiffs, upon a representation of soundness, knowing her at the time to be unsound, the price received was as and for a sound horse; and not, as this animal was, a diseased one; the true measure of damage being the difference between the value of the horse if sound and the value thereof as unsound. *Clare* v. *Maynard*, 32 Com. Law, 713; 7 Carr & Payne, 741.

EASTMAN, J. Several questions are raised in this case, and some of them are not without difficulty. But after considerable consultation among ourselves in regard to them, we have arrived at the conclusion that the exceptions must all be overruled.

The first question presented, as we understand it, is, that there was a variance between the proof and the declaration. This is not so clearly stated in the case as perhaps it might have been, but the counsel upon both sides have treated it in that light, and so we presume it was understood at the trial. The plaintiffs, in the first instance introduced evidence tending to sustain their action in the name of the firm, and to show that the defendant knew he was contracting with the firm. This particularly appears by the testimony of Hall. But on notice from the defendant a bill of the horses is produced, made out to Hersom alone, and receipted by Henderson. This, it is contended, shows that the contract was made with Hersom, and that the action cannot be maintained in the name of the partnership.

It is a well settled principle, that the substance of the issue alone need be proved; but where the allegations are matter of essential description they must be literally proved, as laid. Thus in a declaration upon a promissory note, every allegation is descriptive of the note and essential to its identity and must therefore be strictly proved. *Keyes* v. *Dearborn*, 12 N. H. Rep., 52; 1 Greenl. Ev., § 56. But this is not a declaration contain-

ing matter of essential description, and if the substance of the issue be proved, it is sufficient. The question here is, whether the plaintiffs are the real and proper parties to the suit, or whether Hersom alone should have brought it; and the jury must judge from the whole evidence bearing upon the point. The evidence tends to show that Hersom was the active partner, and frequently acted as the agent of the firm, transacting the business in his own name. The argument of the defendant proceeds upon the ground that the receipt controls the whole matter. But we do not so regard it. It was a mere receipt for money upon the delivery of the horses, which might well enough have been taken in the name of the firm, or in the name of either member of it. We think the counsel for the defendant errs, when he contends that the evidence in this case would not have entitled the defendant to maintain an action against both the plaintiffs, in their partnership name, for the purchase money of the sale. An examination of the evidence satisfies us, that it would be entirely competent and sufficient, and that the receipt could not control it. Besides, a judgment in favor of these plaintiffs would be a good bar to an action brought by Hersom, and the rights of the parties may, for aught we see, be as well tried in this action as in one in favor of Hersom alone.

Among the evidence tending to show the partnership, a witness testified that he had known Hersom to transact the business in his own name. To this evidence, the objection was taken that it was a general statement — a matter of general reputation, as stated in the argument. But the court do not so understand it. It was the testimony of a witness to a fact within his own knowledge, which might have been further enquired into, if desired; and although general reputation is not competent evidence to prove a partnership, (*Grafton Bank* v. *Moore*, 13 N. H. Rep., 99,) yet the transactions of parties bearing upon the point may be received, if not objectionable upon general principles. *Grafton Bank* v. *Moore*, 14 N. H. Rep., 142.

The ground taken that, as against the receipt, the plaintiffs could not show that the purchase was made for Hersom & Co., was in effect stated to be untenable, in considering the first ex-

ception.  A receipt, which purports to be only the acknowledgement of payment or delivery, is merely *primâ facié* evidence of the fact and is open to explanation or contradiction.  Unless it contain some contract, or some obligation by which something is to be done, its recitals can always be explained.  1 Greenl. on Ev., § 305.  This bill contains only evidence of the sale — the delivery of the horses and the receipt of the money.  It is not a paper of that conclusive character contended for by the defendant.

The statement in the agrument, that there was nothing from which Henderson could know or infer that Nason was a party to, or interested in the sale is not sustained by the facts reported. Hall says, that he told Henderson if he would warrant the horses sound, he had some friends who wished to purchase, and named Hersom and Nason ; and upon Henderson's answering that he would warrant them, he sent word to the plaintiffs, by *Henderson*, to come up and see them, and on the next day Nason came up and looked at the horses.  And although it is further said that Henderson was absent when Nason came up, yet it can hardly be presumed that Henderson did not know or infer that Nason was a party to, or interested in the sale.

The next point, the question as to the admissibility of the testimony of the employee in the stable, is one of more doubt. There is nothing in the case indicating that the facts testified to by him, took place after the controversy arose, as is intimated in the argument, and therefore we shall not so consider it.  If such had been the fact, it would probably have been drawn out on cross-examination and would have appeared in the case.

It is extremely difficult, if not impossible, to lay down any exact rule that shall govern this class of questions.  It was said in *Sessions* v. *Little*, 9 N. H. Rep., 271, that if evidence of an act done by a party be admissible, his declaration, made at the time, and tending to elucidate or give a character to the act, and which may derive credit from the act itself, will be also admissible, as part of the *res gestæ*.  We are not disposed to extend the rule there laid down, but after some hesitancy we have thought that this evidence might come within the principle there

explained. The plaintiffs kept the animal in the stable, although wanted for use. This was an act negative in its character, but within the meaning of the term, as used in this connection ; and it was competent for the plaintiffs to show that such was the fact. The declaration, made at the time, tended to elucidate and give character to the act, and derived credit from it. The act then being admissible, the declaration was also, as part of the *res gestœ.*

The question to Rollins, was, according to the argument of the defendant's counsel, put with a view to show that his character for truth was bad. Assuming this to be the case, it was not admissible. A witness may be impeached by disproving the facts testified to by him, by general evidence affecting his credit for veracity, and by showing that he has made statements out of court, contrary to those he has testified to at the trial. 1 Greenl. Ev., § § 461, 462. The course undertaken to be pursued in this instance was not in accordance with any of these rules. The question could not have been asked of any other witness with the view of impeaching Rollins, and if it was not competent to be put to others with that intent, then it could not be asked of Rollins himself, for that purpose.

This question would also seem to have been properly excluded, in the discretion of the court, as degrading to the witness. It is the duty of the court to see that witnesses are rightly protected from disgrace, especially where the questions put do not bear directly upon the issue on trial. 1 Greenl. Ev., § 460.

The testimony offered in connection with what appeared in the cross-examination of Rollins, was upon a collateral matter and properly excluded. If admitted, it would at once have transferred the enquiry from the sale between the plaintiffs and defendant, to the one between Rollins and Rowell. Rollins' testimony on the direct examination went chiefly to the fact that the mare had fits. The purchase by him appears as a merely incidental matter. Had the sale by the plaintiffs to Rollins or from Rollins to Rowell been in any way relied upon by the plaintiffs, as tending to establish any fact pertinent to the issue, the enquiries might have been proper. But the evidence offered by

the defendant would not have been admissible, as independent testimony, to establish the matters contended for in the argument. It could not be received unless to contradict Rollins, and being upon a collateral matter it was not competent for that purpose. This disposes of all the exceptions, and there must be

*Judgment on the Verdict.*